IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERSON MOTORS, INC,

        Plaintiff,

    v.

COOPER LIGHTING, LLC, SONEPAR
MANAGEMENT US, INC., EOFF
ELECTRICAL SUPPLY CO., NORTH
COAST ELECTRIC COMPANY, AND
SOLUS, INC.,

        Defendants.
_____

Case No. 6:20-cv-02115-MC

OPINION AND ORDER

**MCSHANE, Judge**:

        Plaintiff Roberson Motors brings claims for breach of contract, breach of express warranty, and breach of the duty of good faith and fair dealing against Defendant North Coast Electric Company (North Coast). Pl.'s Am. Compl. ¶¶ 29-42, ECF No. 9. Roberson Motors also brings a claim for breach of express warranty against Defendant Cooper Lighting. Pl.'s Am. Compl. ¶ 25. Roberson Motors seeks damages totaling $530,024.30. Pl.'s Am. Compl. ¶ 27. North Coast moves for summary judgment on the grounds that the claims are barred by the applicable statute of limitations. Def.'s Mot. Summ. J. 2, ECF No. 53. Cooper Lighting moves for partial summary judgment as to certain damages. Def.'s Mot. Partial Summ. J. 2, ECF No. 61. For the reasons discussed below, both North Coast and Cooper Lighting's motions are GRANTED.

1 – OPINION AND ORDER

**BACKGROUND**

Roberson Motors purchased a lighting control system from North Coast for approximately $137,000. Pl.'s Am. Compl. ¶ 10. Due to North Coast's inability to provide the lighting control system's "dimming feature," Roberson Motors "agreed to subcontract with Defendant Solus for the lighting system."[1] Pl.'s Am. Compl. ¶¶ 10-11. North Coast and Solus ultimately purchased the lighting control system from Cooper Lighting, LLC, who provided a warranty. Pl.'s Am. Compl. ¶ 11. Roberson Motors paid $14,986.30 to AC&E Electric Company, Inc. to install the lighting system. Pl.'s Am. Compl. ¶ 13.

Immediately upon installation of the system on December 11, 2015, Roberson Motors noticed defects involving the motion sensor feature and lighting fixtures. Pl.'s Am. Compl. ¶ 16. After Roberson Motors reported the issues, North Coast and Solus "admitted to Plaintiff that there was a 90% failure rate with the lighting system because it outsourced the controls." Pl.'s Am. Compl. ¶ 18. Cooper Lighting offered to replace the defective control drives and fixtures. *Id.* Over the next four years, Roberson Motors attempted to fix the defective system with the aid and support of Cooper Lighting, North Coast, and Solus. Pl.'s Am. Compl. ¶ 19. However, Defendants "were unwilling to repair the lighting system, replace the lighting system, or fully reimburse Plaintiff for the lighting system." *Id.* Roberson Motors estimates that it is entitled to $530,024.30 in damages that stem from the original defective lighting system, increased electricity costs, replacing the faulty lighting system, and paying for new installation. Pl.'s Am. Compl. ¶¶ 21-22. In response to this demand, Cooper Lighting argues that damages are limited by their express warranty to "only

---

[1] Roberson Motors alleged Solus breached its duty of good faith and fair dealing by refusing to fix the lighting system. Last December, the Court granted Solus's motion to dismiss based on fraudulent joinder. ECF No. 48.

2 – OPINION AND ORDER

the cost of those products subject to a warranty claim that Cooper sold to its 'buyer,' [North Coast]." Def.'s Mot. Partial Summ. J. 2.

In December 2020, Cooper Lighting removed this action to federal court. Notice of Removal, ECF No. 1. After not being named in the original complaint, Roberson Motors named North Coast as a defendant in the amended complaint filed in March 2021. Pl.'s Am. Compl. ¶ 29. As noted, Roberson Motors asserted three contract claims against North Coast: breach of contract; breach of express warranty; and breach of the duty of good faith and fair dealing. Pl.'s Am. Compl. ¶¶ 29-42. These claims arose from North Coast "providing a defective lighting system to Plaintiff and refusing to repair, replace, or fix the defective lighting system in any reasonable manner." Pl.'s Am. Compl. ¶ 42. In response, North Coast argues that these claims are barred by the applicable statute of limitations. Def.'s Mot. Summ. J. 2.

## **STANDARD**

The court must grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S.

3 – OPINION AND ORDER

242, 247–48. Rather, the non-moving party must proffer evidence that could reasonably affect the outcome of the suit. *Miller*, 454 F.3d at 988.

## DISCUSSION

I.  **North Coast's Motion for Summary Judgment on Breach of Contract Claims**

This transaction is a sale of goods and is subject to the Uniform Commercial Code (UCC). ORS § 72.1020. The statute of limitation for a breach of contract claim under the UCC is four years after the cause of action has accrued. ORS § 72.7250(1).

On December 11, 2015, Roberson Motors received a lighting system provided by North Coast. *See* Cramer Decl., Ex. 7, ECF No. 15. Roberson Motors alleges that "[i]mmediately following the lighting system's installation, Plaintiff noticed material defects in the motion sensor feature and learned . . . [it was] not compatible with the most recent software." Pl.'s Am. Compl. ¶ 16. Roberson Motors's cause of action accrued when it immediately noticed the material defects in the lighting system and the lights did not function as North Coast promised. *See* Roberson Decl. ¶ 4, ECF No. 59 (stating that North Coast assured Roberson Motors that the lighting system would "accomplish [its] objectives regarding the cost/efficiency, environmental impact, and lighting quality."). Roberson Motors did not file its amended complaint adding North Coast until March 19, 2021. Pl.'s Am. Compl. 1. Because the four-year statute of limitations for breach of contract ran no later than December 2019, and Roberson Motors did not file its claims against North Coast until March 2021, Roberson Motors's breach of contract claim is untimely.

In response to North Coast's statute of limitations argument, Roberson Motors argues the future performance and discovery exception applies. Specifically, that exception provides that "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or

4 – OPINION AND ORDER

should have been discovered." ORS § 72.7250(2). Roberson Motors argues "that North Coast created an express warranty for future performance of the lighting system when it represented that the system would be more efficient, lower Plaintiff's environmental impact, and provide particular lighting features." Pl.'s Resp. Def.'s Mot. Summ. J. 10. This Court disagrees. North Coast's representations of the lighting system may have created an express warranty. *See* ORS § 72.3130 (defining express warranty and stating that "it is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty"). However, the representations clearly cannot rise to the level of an express warranty of future performance because they did not explicitly extend to a future time. *See Hunter v. Woodburn Fertilizer, Inc.*, 144 P.3d 970, 973 (Or. Ct. App. 2006) ("In addition to being an express warranty, a warranty of future performance must 'explicitly extend[] to future performance' and 'discovery of the breach must await the time of such performance.'") (alteration in original) (quoting ORS § 72.7250(2)).

North Coast has not expressly warranted the future performance of the lighting system. North Coast's assurance that the lighting system would accomplish Roberson Motors's objectives regarding cost/efficiency, environmental impact, and lighting quality is not an explicit guarantee that the lighting system would perform until some future date. *See* 1 White, Summers, & Hillman, Uniform Commercial Code § 12:18 (6th ed.) (exemplifying that "such a case would be one in which the seller gave a 'lifetime guarantee,' or warranted that the product would be free from defects for 25 years, or warranted that an automobile would last for 24,000 miles or four years, whichever occurred first."); *Torch v. Windsor Surry Co.*, No. 3:17-CV-00918-AA, 2019 WL 6709379, at *9 (D. Or. Dec. 9, 2019) (holding that vague representations do not warrant future performance.). In contrast to North Coast's general statements about how the lighting system

5 – OPINION AND ORDER

would perform, a warranty of future performance represents a specific point in the future through which the product should be expected to perform. *See Torch*, 2019 WL 6709379, at *9 (holding that a representation did not warrant future performance because it did "not denote a *specific point in the future* through which the product should be expected to perform.").

Additionally, even if this Court were to find that North Coast's representations rose to such a level of specificity, Roberson Motors concedes that it discovered the breach in December 2015. *See* Cramer Decl., Ex. 7; Roberson Decl. ¶ 7 (noting "the lighting system did not work properly" and Roberson Motors "informed North Coast of the issues immediately."). Therefore, this claim would still be untimely as the statute of limitations ran no later than December 2019. *See* ORS § 72.7250(2) (explaining that "where a warranty explicitly extends to future performance . . . the cause of action accrues when the breach is or should have been discovered").

Roberson Motors also alleges that North Coast provided and breached a five-year express warranty against latent defects. Pl.'s Am. Compl. ¶¶ 35-37. However, Roberson Motors conceded that Cooper Lighting, not North Coast, provided the five-year warranty. *See* Roberson Decl. ¶ 9 ("my belief is that Cooper Lighting provided a 5-year warranty on its products"). Additionally, the Court fails to see the relevance of whether North Coast did or did not provide a five-year warranty. Even if North Coast provided a five-year warranty in December 2015, Roberson Motors did not bring claims against North Coast until March 2021.

Roberson Motors also brings a claim for breach of the duty of good faith and fair dealing against North Coast. "All contracts contain an implied covenant of good faith and fair dealing." *Morrow v. Red Shields Ins. Co.*, 159 P.3d 384, 388 (Or. Ct. App. 2007). Good faith has been defined as meaning "honesty in fact and the observance of reasonable standards of fair dealing." ORS § 71.2010(2)(t). Roberson Motors argues that North Coast breached its duty when it

6 – OPINION AND ORDER

"conducted itself in such a manner that Plaintiff reasonably believed that North Coast intended to remedy Plaintiff's lighting issue." Pl.'s Resp. Def.'s Mot. Summ. J. 12, ECF No. 58. Plaintiff provides no citation to any caselaw in support of this argument:

> North Coast breached its duty of good faith and fair dealing when it made representations and conducted itself in such a manner that Plaintiff reasonably believed that North Coast intended to remedy Plaintiff's lighting issue caused by the defective product it sold. Because of North Coast's promises and representations to Plaintiff, including multiple emails demonstrating that a deal was being made with Cooper, Plaintiff did not look for alternate ways to mitigate its damages. While Plaintiff waited, in good faith, for North Coast to resolve the matter, Plaintiff suffered increased electricity costs and its car lot was not lit as North Coast promised and Plaintiff expected.

Pl.'s Resp. Def.'s Mot. Summ. J. 12. This Court disagrees because, as North Coast argues, Roberson Motors has provided no evidence that North Coast contracted to refund, replace, or repair the defects of the lighting system. Instead, Brett Roberson's declaration and the attached email chains merely show that Cooper Lighting and North Coast disagreed over who would pay for the labor to replace the lighting system. And by the time those negotiations broke down, the statute of limitations, at least as to North Coast, had run. Therefore, even if this Court were to find that North Coast breached said duty, it would still be subject to the UCC's four-year statute of limitations which, as discussed previously, ran no later than December 2019. *See U.S. Nat. Bank of Oregon v. Boge*, 814 P.2d 1082, 1092 (Or. 1991) ("The obligation of good faith does not vary the substantive terms of the bargain.").

Similarly, Plaintiff has not established equitable tolling or estoppel applies. The Court agrees with Plaintiff that, in certain circumstances, "Oregon Courts have applied the principles of equitable estoppel to claims arising under the UCC." Pl.'s Supp. Memo. 4; ECF No. 77 (citing *May Trucking Co. V. Northwest Volvo Trucks, Inc.*, 238 Or. App. 21, 38 (2010)). While Plaintiff

points out general legal concepts, it fails to even attempt to analogize the facts in any of the cited cases to the facts present here.

In contrast, North Coast points to specific cases and demonstrates why Plaintiff's arguments here fail. The Court agrees with North Coast that *Donahoe v. Mid-Valley Glass Co.*, 84 Or. App. 584 (1987) controls here. There, a greenhouse that plaintiff purchased had a defective leak. The defendants "agreed to correct the problem the following spring" and "attempted unsuccessfully to rectify the problems with the roof." *Id.* at 586. That plaintiff's estoppel arguments mirror Plaintiff's arguments here:

> That after the corrective work done by each Defendant on or about May of 1982 and on or about May of 1982, each Defendant advised the Plaintiff that said leaking situation had been corrected and would not be a problem. The Plaintiff believed and relied upon the representations of the said Defendants. Plaintiff did not discover that said representations were false until the following winters when said glass greenhouse type roof would leak.

*Id.*

In rejecting plaintiff's estoppel arguments, the court noted "[m]ere pendency of negotiations do not give rise to estoppel." *Id.* at 587. Unsuccessful attempts at repair, without more, do not give rise to estoppel. Here, there is no evidence that any of the attempted repairs, or negotiations about who would perform the repairs, "were meant as an affirmative inducement for plaintiff to desist from litigation or had anything to do with the prospect of litigation." *Id.* at 588.

> Moreover, plaintiff's allegations show on their face that she could not reasonably have relied on either the repairs or defendants' representations about them in not bringing the action. She knew by the winter of 1982-83 that the May, 1982, attempts at repair had failed. Although the limitation period for the original negligence expired in the meantime, she awaited another spring's remedial efforts and another winter's storms before she sued.

*Id.* at 588-89.

Plaintiff's equitable tolling arguments fare no better. "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alverez*, 572 U.S. 1, 10 (2014). Here, despite knowing from the start that the lights never worked, Plaintiff waited over five years before bringing claims against North Coast. Unsuccessful repairs, and negotiations over who would perform certain repairs (or pay for labor), do not constitute extraordinary circumstances preventing Plaintiff from bringing a timely action.

**II.    Cooper Lighting's Motion for Partial Summary Judgment on Damages**

Roberson Motors seeks $530,024.30 in damages. Pl's Am. Compl. ¶ 22. Roberson Motors has divided the damages into three sections: $151,986.30 for the defective lighting system and its installation; $128,038 for a replacement lighting system; and $250,000 for increased electricity costs. *Id.* Cooper Lighting provided a five-year express warranty for its products following delivery of the products to Roberson Motors. Pl.'s Am. Compl. ¶ 24. Additionally, as this warranty is a limited warranty, Cooper Lighting seeks to limit the damages accordingly:

> **5. <u>Limited Warranty</u>**
> (a) ) Seller warrants to each original Buyer of Products that Products are, at the time of delivery to the Buyer, in good working order and conform to Seller's official published specifications, provided that no warranty is made with respect to any Products, component parts, or accessories manufactured by others but supplied by Seller.
> (b) Seller's obligation under this warranty for any Product proved not to be as warranted within the applicable warranty period is limited to, at its option, replacing the Product, refunding the purchase price of the Product, or using reasonable efforts to repair the Product during normal business hours at any authorized service facility of Seller. All costs of transportation of any Product claimed not to be as warranted and of any repaired or replacement Product to or from such service facility shall be borne by Buyer.
> (c) Seller may require the return of any Product claimed not to be as warranted to one of its facilities as designated by Seller, transportation prepaid by Buyer, to establish a claim under this warranty. The cost of labor for removing a Product and for installing a repaired or replacement Product shall be borne by Buyer.

> Replacement parts provided under the terms of this warranty are warranted for the remainder of the warranty period of the Products in which they are installed to the same extent as if such parts were original components. Warranty services provided under these terms and conditions do not assure uninterrupted operations of Products; Seller shall not be liable for damages caused by any delays involving warranty service. . . .
> (e) **EXCEPT FOR THE EXPRESS WARRANTY SET FORTH ABOVE, SELLER PROVIDES PRODUCTS AS-IS AND MAKES NO OTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, REGARDING THE PRODUCTS, THEIR FITNESS FOR ANY PARTICULAR PURPOSE, THEIR MERCHANTIBILITY, THEIR QUALITY, THEIR NONINFRINGEMENT, OR OTHERWISE. IN NO EVENT SHALL SELLER BE LIABLE FOR THE COST OF PROCUREMENT OR INSTALLATION OF SUBSTITUTE GOODS.**

Ballard Dec., Ex. 1. (capitalization and bold in original). The warranty also contains a limitation of liability clause:

> **6. LIMITATION OF LIABILITY**
> **IN NO EVENT WILL SELLER BE LIABLE FOR ANY SPECIAL DAMAGES, CONSEQUENTIAL DAMAGES, INDIRECT DAMAGES, INCIDENTAL DAMAGES, STATUTORY DAMAGES, EXEMPLARY OR PUNITIVE DAMAGES, LOSS OF PROFITS, LOSS OF REVENUE, LIQUIDATED DAMAGES, OR LOSS OF USE, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. SELLER'S LIABILITY FOR DAMAGES ARISING OUT OF OR RELATED TO A PRODUCT SHALL IN NO CASE EXCEED THE PURCHASE PRICE OF THE PRODUCT FROM WHICH THE CLAIM ARISES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THESE LIMITATIONS AND EXCLUSIONS WILL APPLY WHETHER SELLER'S LIABILITY ARISES OR RESULTS FROM BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE, GROSS NEGLIGENCE, MALICE, OR INTENTIONAL CONDUCT), STRICT LIABILITY, BY OPERATION OF LAW, OR OTHERWISE.**

*Id.* (capitalization and bold in original). Roberson Motors's damages are limited by the terms of the warranty. In response, Roberson Motors argues that the terms of the warranty are unconscionable, that Plaintiff is entitled to incidental and consequential damages, and that

Cooper's post-sale actions created a new express or implied warranty. *See* Pl.'s Resp. Def.'s Mot. Partial Summ. J., ECF No. 66.

The UCC permits limitation of liability clauses unless the limitation is found to be unconscionable. *See* ORS § 72.3160. This Court finds Roberson Motors's argument regarding unconscionability to be unconvincing. Roberson Motors argues that because Cooper Lighting knew there was a '90% failure rate' for the lighting system sold to Roberson Motors, the Limitation of Liability section is unconscionable. Pl.'s Resp. Def.'s Mot. Partial Summ. J. 8. Limitation of damages where the loss is commercial, however, is presumed not to be unconscionable. *See* ORS § 72.7190(3). *See also Agristor Credit Corp. v. Schmidlin*, 601 F. Supp. 1307, 1314 (D. Or. 1985) ("Such a clause will be enforced 'when it is part of a bargain in fact between business concerns that have dealt with one another at arm's length in a commercial setting.'") (quoting *Atlas Mut. Ins. Co. v. Moore Dry Kiln*, 38 Or. App. 111, 114 (1979)). Additionally, the clause of the contract must have been unconscionable at the time it was made. ORS § 72.3020(1). In support of its argument that the clause is unconscionable, Roberson Motors cites a July 2020 email between two North Coast representatives. *See* Roberson Decl. ¶ 10; Ex. 2, 1. (North Coast representatives stating that Cooper admitted a 90% failure rate to them). This email was exchanged over four years after Roberson Motors purchased the lighting system and it fails to show how the clause was unconscionable at the time of the purchase.

Roberson Motors also argues that Cooper Lighting, through a course of performance regarding the repair of the lights, created a new implied or express warranty. Pl.'s Resp. Def.'s Mot. Partial Summ. J. 12. The Court fails to understand how, without any evidence of any communications between Cooper Lighting and Roberson Motors, Cooper Lighting could have created a new warranty, implied or express. Roberson Motors cites *Oregon Bank v. Nautilus Crane*

11 – OPINION AND ORDER

*& Equip. Corp.*, 683 P.2d 95 (Or. App. 1984) to support its argument that Cooper Lighting waived the limitation of liability clause. *See* Pl.'s Resp. Def. Mot. Partial Summ. J. 9. It is true that "a course of performance is relevant to show a waiver or modification of any term inconsistent with the course of performance." ORS § 71.3030(6). However, Cooper Lighting's actions are not a course of performance:

> (1) A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if:
> (a) The agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and
> (b) The other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

ORS § 71.3030(1). This Court has not been presented with any evidence that there were "repeated occasions for performance" and Cooper Lighting acquiesced without objection. In fact, the evidence presented has only shown an effort to remedy the issues with the product pursuant to Cooper Lighting's express warranty.

Somewhat confusingly, Roberson Motors argues that Cooper Lighting "created an express warranty for future performance of the lighting system when it represented that the system would be more efficient, lower Plaintiff's environmental impact, and provide particular lighting features." Pl.'s Resp. Def.'s Mot. Partial Summ. J. 12. The Court again fails to understand how, without any evidence of any communications between Cooper Lighting and Roberson Motors, an express warranty of future performance could be created. The evidence only shows that North Coast made such representations.[2] *See* Roberson Decl. ¶ 4, ECF No. 68. Roberson Motors also fails to

---

[2] In fact, Roberson Motors admits it had no direct communications with Cooper Lighting before purchasing the lighting system. Cramer Decl. Ex. 3, 2; ECF No. 62.

12 – OPINION AND ORDER

demonstrate how such a warranty, created by North Coast, would waive Defendant Cooper Lighting's limitation of liability clause.[3]

Roberson Motors also argues that it is entitled to incidental and consequential damages. The Court finds this argument unpersuasive. Roberson Motors incorrectly relies on *Utility Equipment, Inc. v. Morbark Industries, Inc.* in defense of its assertion of the damages. Pl.'s Resp. Def. Mot. Partial Summ. J. 12. There, the court determined that "where . . . the warranty is silent as to who pays labor costs, the question is for the trier of fact to determine." *Util. Equip., Inc. v. Morbark Indus., Inc.*, 779 P.2d 139, 139 (Or. 1989). However, Cooper Lighting's warranty is not silent. Cooper Lighting states in its warranty, "the cost of labor for removing a Product and for installing a repaired or replacement Product shall be borne by the Buyer." *See* ECF No. 63, Ex. 1, ¶5 (c). Similarly, any damages for increased electricity costs are barred by Cooper Lighting's limited warranty.

## CONCLUSION

For the above reasons, North Coast's Motion for Summary Judgment (ECF No. 53) and Cooper Lighting's Motion for Partial Summary Judgment (ECF No. 61) are GRANTED.

IT IS SO ORDERED.

DATED this 16th day of November, 2022.

                _____/s/ Michael J. McShane_____
                    Michael McShane
                  United States District Judge

---

[3] The Court concluded in section one above that North Coast's representations did not rise to the level of creating an express warranty of future performance.

13 – OPINION AND ORDER